NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD R. KREIMER, | Civil Action No. 2:08-cv-02364 (SDW) (MCA) |
| Plaintiff, | |
| v. | OPINION |
| CITY OF NEWARK, et al., | |
| Defendants. | March 30, 2011 |

**WIGENTON**, District Judge.

Before the Court are Defendants', New Jersey Transit employees ("NJT Defendants") and City of Newark, motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Defendant Eliezer Rosa's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' motions.

**PROCEDURAL AND FACTUAL HISTORY**

Plaintiff is a homeless resident of the State of New Jersey. On October 31, 2007, Plaintiff was a ticketed passenger at Pennsylvania Station in Newark, New Jersey when he was approached by Defendant Officer Robert Scott. Officer Scott advised Plaintiff that Plaintiff's presence in Pennsylvania Station was in violation of the City of Newark

Code 20-2-14-4 ("the Newark ordinance"). Officer Scott informed Plaintiff that "he was not using Penn Station for its intended purpose, and ordered Plaintiff to leave the location under threat of arrest for said violation." Plaintiff was not given a citation for violating the Newark ordinance[1]. It is undisputed that the Newark ordinance is unconstitutional pursuant to the New Jersey Supreme Court decision in *State v. Crawley*, 90 N.J. 241 (1982). Said ordinance was never repealed by the City of Newark.

On June 9, 2009, Plaintiff attempted to board another train operated by New Jersey Transit, Inc. ("NJT"). According to Plaintiff, he was not permitted to board the train by Defendant Rosa, a NJT employee. Plaintiff alleges that Defendant Rosa identified him as "the guy who was suing New Jersey Transit"; accused him of never having a ticket; and "gave Plaintiff the finger" as the train pulled away.

Plaintiff filed his initial complaint, pro-se, on May 13, 2008. Two months later, attorneys joined the case on behalf of Plaintiff; and thereafter, filed amended complaints. The following defendants filed a motion to dismiss the complaint on November 9, 2009: NJT; NJT Police Department; NJT Police Chief Joseph Bober; NJT Police Captain Alphonsus Stiehler; NJT Police Administrative Sergeant DiBennetto; NJT Director Richard Sarles; and NJT Lieutenant Dawes. Oral argument regarding that motion was held on April 16, 2010.

At the April 16, 2010 proceeding, Plaintiff's attorney stated that he did not oppose the motion as to NJT, NJT Police Department, Sergeant DiBennetto, or Lieutenant Dawes. Plaintiff's attorney stated that he did oppose the motion as to Defendants

---

[1] The Third Amended Complaint filed on July 23, 2010, claims that "Plaintiff was cited for violations" as a result of enforcement of the Newark ordinance. (Compl. at 4.) However, Plaintiff stated in his deposition on March 4, 2010, that he was not cited on that day. (Kreimer Dep. at 43.)

Stiehler, Bober, and Sarles. Plaintiff's attorney further stated that he would file an amended complaint as to those individuals. The Third Amended Complaint ("Complaint") was filed on July 23, 2010.

The latest complaint has not cured the defects of the Second Amended Complaint against Defendants Bober, Sarles, and Stiehler because the claims in the Third Amended Complaint are almost identical to those of the previous complaint, and do not put forth any additional information. Based on the April 16, 2010 oral argument and corresponding order and Plaintiff's Third Amended Complaint, the remaining Defendants are the City of Newark, Eliezer Rosa, Officer Scott, Captain Imperiale, and several John Does.

**MOTION FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the

truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323. In addition, the Court may "grant the motion on grounds not raised by a party," after proper notice and a "reasonable time to respond." Fed. R. Civ. P. 56(f).

**New Jersey Transit Defendants**

Unless they are protected by qualified immunity, police officers working under color of state law are liable pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of an individual's constitutional rights. *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). The Supreme Court set forth a two-step process for determining if an official is entitled to qualified immunity. *Id.* First, "a court must address whether 'the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alteration in original).

In the second step, the court must examine "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 207 (quoting *Saucier v. Katz*, 533 U.S. at 202). The Supreme Court has stated on various occasions

that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Official action is not per-se protected by qualified immunity on the basis that the action has not "previously been held unlawful," but, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citations omitted).

The two-step procedure is not an inflexible requirement and defendants "are entitled to qualified immunity on the ground that it was not clearly established at the time" of the events in question that their conduct was unconstitutional. *Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009). The sequence of the analysis is not mandatory. *Id.* The Supreme Court clarified that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Id.* Therefore, the district courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Plaintiff's claims against Captain Imperiale are based on his failure to train Officer Scott by not informing him of the invalidity of the Newark ordinance. "A supervising authority may be liable under [Section] 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact, notwithstanding the qualified immunity of an officer at the scene." *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). The plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged

5

constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). The plaintiff cannot rely on "general laxness or ineffectiveness in training" but must point to a specific deficiency. *Canton v. Harris*, 489 U.S. 378, 387 (1989).

Here, Plaintiff has failed to indicate Captain Imperiale's specific deficiency in training or supervising Officer Scott. Plaintiff's Complaint alleges that Captain Imperiale had a duty to train the officers under his command, but fails to put forth evidence of the specific training that Captain Imperiale failed to pass on to Officer Scott, or evidence of deliberate indifference other than a general statement that he had a duty to inform his officers of invalidated ordinances.

Plaintiff also claims that Captain Imperiale and Officer Scott engaged in a conspiracy to "deny homeless people due process of law, and to drive them from NJT facilities where they lawfully congregated." (Compl. at 11.) Under 42 U.S.C. § 1985 ("Section 1985"), a "[p]laintiff must demonstrate that (1) there was a conspiracy of [d]efendants designed to deprive [p]laintiff of equal protection of the law; (2) [d]efendants committed an overt act in furtherance of that conspiracy; (3) [p]laintiff's rights were violated as a result of this action; and, (4) [d]efendants' actions were motivated by racial or otherwise class-based invidiously discriminatory animus." *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 450 (M.D. Pa. 2009). The plaintiff must point to specific facts showing that the defendants "reached an understanding or agreement to violate Plaintiff's civil rights" and not just that they "had a common goal or acted in concert." *Id.* (citing *Martin v. Del. Law Sch. of Widener Univ.*, 625 F. Supp. 1288 (D. Del. 1985), judgment aff'd, 884 F.2d 1384 (3d Cir. 1989)). "In order to prove the existence of a civil conspiracy, Plaintiff must show that the conspirators agreed to inflict

injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Id.* In this case, Plaintiff has not put forth any evidence of an agreement or conspiracy among any of the Defendants aside from the general allegations in his Complaint.

Captain Imperiale is therefore protected by qualified immunity because Plaintiff has not provided any evidence to this Court indicating that Captain Imperiale's conduct violated Plaintiff's constitutional rights.

As to Officer Scott, this Court will only address the second prong of the test because it is clear that he was not unreasonable in believing that his conduct was lawful. An officer can "approach[] an individual in a public place, identif[y] himself as a law enforcement agent, ask[] questions, ask[] to search a person's bags, or explain[] that he is conducting a narcotics investigation" without the encounter turning into a seizure. *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005). Law enforcement officers "may pose questions, ask for identification, and request consent to search luggage, provided they do not induce cooperation by coercive means." *Id.* An individual has not been seized if a reasonable person feels free to terminate the encounter. *Id.*

The encounter did not rise to the level of seizure as Plaintiff was free to leave at any moment. In fact, Officer Scott asked him to leave and Plaintiff refused even under the possible threat of arrest. During the entire encounter, not only was Plaintiff free to leave Officer Scott's presence, but he was asked to do so. Based on the current case law, it would be reasonable for a police officer to believe that he was acting in a lawful manner by approaching Plaintiff in a train station's waiting area, questioning him, and asking to search his bag.

Further, although Officer Scott did threaten Plaintiff with enforcing the Newark ordinance, he was not aware that the ordinance was unlawful. The ordinance had remained on the City of Newark's municipal code and ordinance book issued to officers. Under these facts, this Court cannot find that it was clear to Officer Scott that his conduct was unlawful, or that he enforced an invalid ordinance. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (holding there was no basis to suggest "a reasonable official standing in the defendants' shoes would have any way of knowing that by failing to personally check all California appellate court decisions for changes in the law, [and] failing to apply these changes to individual inmates statewide . . . he or she was violating [Plaintiff's] constitutional rights); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (distinguishing between suits against a defendant in his or her personal capacity versus official capacity and directing that "objectively reasonable reliance on existing law" is a defense in the former). Thus, Officer Scott is protected by qualified immunity and summary judgment is granted as to all of the claims against him.

**City of Newark**

Plaintiff claims the City of Newark "knew or should have known that the Newark ordinance was void, illegal and unconstitutional under both the United States Constitution and the Constitution of the State of New Jersey" resulting in a violation of Plaintiff's civil rights. (Compl. at 3, 8.) The New Jersey Supreme Court declared Newark's municipal loitering ordinance to be invalid based on the preemption of state law; not on constitutional grounds. *See State v. Crawley*, 90 N.J. at 244.

"Violations of state law . . . are insufficient to state a claim under § 1983." *Giuffre v. Bissell*, 31 F.3d 1241, 1257 (3d Cir. 1994) (holding that plaintiff's claims were

8

"predicated on an alleged violation of the procedures established under New Jersey law governing civil forfeiture") (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992); *see also Fagan v. City of Vineland*, 22 F.3d 1296, 1309 n.9 (3d Cir. 1994) (stating that "duties under state law cannot create constitutional obligations"). Here, Plaintiff argues the City of Newark violated the law established under *State v. Crawley*. This Court must grant summary judgment to the City of Newark because Plaintiff's claims refer only to non-compliance with state law. Any claims involving rights defined in the United States Constitution or federal law are unsupported.

**MOTION TO DISMISS**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citations omitted). A pleading is sufficient if it alleges "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff must put forth enough information to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. County of Allegheny*, 515 at 231.

While a court will accept well-pleaded allegations as true for purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. De Kalb County, Ga.*, 433 U.S. 25, 27 n.2 (1977); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1429-30 (3d Cir. 1997) (holding that a court does not need to credit "bald assertions" or "legal conclusions" of a complaint when deciding a motion to dismiss).

The pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading cannot rely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "Facial plausibility" exits when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Furthermore, a plaintiff cannot just "plead[] facts that are 'merely consistent with' a defendant's liability, [as] it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and such a determination "requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Plaintiff claims that on June 9, 2009, Defendant Rosa blocked his access to a train car; prevented the Plaintiff from boarding a NJT Train; and stated that he recognized Plaintiff as "the guy who was suing New Jersey Transit." (Compl. at 5-6.) Plaintiff has only substituted Defendant Rosa for John Doe #1 in one paragraph of his Complaint, therefore this Court will assume that all references to John Doe #1 in Plaintiff's Complaint are to Defendant Rosa.

Defendant Rosa is also entitled to qualified immunity. First, Plaintiff does not put forth facts in his Complaint indicating that Defendant Rosa reached an understanding or agreement with others in violation of Section 1985.

Second, Plaintiff claims that Defendant Rosa engaged in a retaliatory act in violation of Section 1983. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3rd Cir. 2006) (*quoting Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The Court's primary concern is "whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296. Plaintiff asserts that he was not permitted to board that particular train but that he continues to travel on New Jersey Transit. In this Court's opinion, this one incident accompanied by Rosa commenting that Plaintiff was the one suing NJT, does not amount to a "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Therefore, Plaintiff has not made an adequate showing of the elements of this claim to survive a motion for summary judgment.

Third, Plaintiff asserts that Defendant Rosa infringed his right to travel in violation of Section 1983. The right to travel is usually discussed in the context of challenges to statutes or ordinances and "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers

11

who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). In cases implicating a state law, the right to travel may be infringed when the state law "actually deters such travel, when impeding travel is its primary objective, or when it uses 'any classification which serves to penalize the exercise of that right.'" *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations omitted).

Plaintiff has not identified which federal law or section of the Constitution protects his right to travel in this instance. He has not clarified whether Defendant Rosa stopped him from boarding the train based on his being homeless, having previously sued New Jersey Transit, or for some other ill will. Plaintiff merely states that he was prevented from boarding the train on that one occasion (although he continues to use New Jersey Transit regularly) and that a NJT employee, whom Plaintiff believes to be Defendant Rosa, identified him as having previously sued NJT. Plaintiff has not provided sufficient factual matter to show that his claims are plausible. This Court would have to draw too many inferences to find a cause of action in Plaintiff's Complaint.

Finally, Plaintiff claims that Defendant Rosa committed violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The Fourteenth Amendment states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Due Process Clause "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State" and also has a substantive component

"that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). To show a violation of the Equal Protection Clause, a plaintiff "must prove the existence of purposeful discrimination" by "demonstrat[ing] that they received different treatment from that received by other individuals similarly situated." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). In the present case, Plaintiff has not provided this Court with any facts to support his claims against Defendant Rosa. The Due Process and Equal Protection claims against Defendant Rosa, as stated in the Complaint, are nothing more than legal conclusions.

Plaintiff's allegations against Defendant Rosa are not well pleaded and thus do not survive a motion to dismiss. Although this is Plaintiff's third opportunity to amend his complaint, the factual representations even when taken as true do not support Plaintiff's claims of Constitutional violations by this defendant. Defendant Rosa is protected by qualified immunity because his conduct did not violate a constitutional right. It is therefore unnecessary to address whether his conduct was reasonable.

**CONCLUSION**

For the reasons stated above, the motions for summary judgment are granted as to all of the remaining defendants. This Court declines to retain jurisdiction over the pendent state claim and those claims are also dismissed. *See Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir. 1980).

                                                                    s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
      Parties